# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES E. CALHOUN,[1]<br><br>　　　　　Petitioner,<br><br>　vs.<br><br><br>ROY A. CASTRO,<br><br>　　　　　Respondent. | CASE NO. 07cv397-LAB (NLS)<br><br>**ORDER ACCEPTING OBJECTIONS TO REPORT AND RECOMMENDATION AND SUPPLEMENTAL OBJECTIONS AS FILED AND DENYING AS MOOT REQUEST FOR LEAVE TO SUPPLEMENT OBJECTIONS; AND**<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION** |

On March 2, 2007, Petitioner, a prisoner in custody pursuant to a state court judgment, filed his petition for writ of habeas corpus (the "Petition") under 28 U.S.C. § 2254. Pursuant to 28 U.S.C. § 636(b)(1)(B) and Civil Local Rule 72.1, the Petition was referred to Magistrate Judge Nita Stormes for report and recommendation. On March 6, 2007, Judge Stormes issued a scheduling order requiring briefing from both Petitioner and Respondent. On May 4, 2007, Judge stormes granted Respondent's application for enlargement of time,

/ / /

---

[1] The Petition identifies Petitioner as "Calhoun E. Charles," but in his pleadings Petitioner refers to himself as "Mr. Calhoun" and the lodged state court records identify him as "Charles E. Calhoun." The Court therefore concludes the name given in the Petition was an error and directs the Clerk to correct the docket to show Petitioner's name as "Charles E. Calhoun."

extending all briefing dates. Respondent then filed an answer on June 4, 2007, but Petitioner never filed a traverse or any other briefing.

## I. Objections and Supplemental Objections

On December 7, 2007, Judge Stormes issued her report and recommendation (the "R&R") in this case, ordering Petitioner to file his objections to the R&R no later than January 2, 2008. Petitioner then filed a pleading styled "Notices of Objection to all 'Report and Recommendation'" ("First Objections"), accepted by discrepancy order on January 3, 2008 and filed *nunc pro tunc* to December 26, 2007.

In the First Objections, Petitioner initially stated he had not been able to prepare objections to the R&R due to being held in administrative segregation without access to the prison library, as well as to confiscation of his legal forms and his traverse motions He also says he was still suffering from injuries. Petitioner also says he needed a court order with deadlines to have priority to use the prison law library.

In support of his contentions regarding administrative segregation and library use, Petitioner attached several administrative documents. These documents, however, are dated no later than November 28, 2007 and show Petitioner was involved in administrative proceedings expected to be completed by December 4, 2007. Among these documents is also a memorandum from the prison's library officer alerting Petitioner that the library may take up to 7 days to respond to requests, and informing Petitioner of the library's policy of giving priority to prisoners with upcoming litigation deadlines.

According to the documents Petitioner submitted, the incident in which Petitioner was injured occurred in July, 2007, but as of November 16, 2007, Petitioner stated he was in good health. Furthermore, because the R&R itself gave Petitioner a deadline by which to object to the R&R, Petitioner was eligible for law library priority based on that deadline. The First Objection was signed December 18, 2007, approximately two weeks before Petitioner was required to file his objections to the R&R.

In spite of Petitioner's statement that he could not file objections to the R&R, Petitioner included several pages of objections in his First Objections. He supplemented

these with exhibits, which were accepted for filing on January 17, 2008 and filed *nunc pro tunc* to January 14, 2008. The Court therefore construes these as incomplete preliminary objections accompanied by a request for leave to supplement them, which the Court **GRANTS**.

On January 11, 2008, the Court accepted by discrepancy order an uncaptioned request (the "Application for Extension") directed to the Clerk explaining Petitioner's situation and apparently seeking additional time to file objections. This was filed *nunc pro tunc* to January 2, 2008. The Application for Extension focused on the administrative investigation of alleged misbehavior by prison officers against Petitioner, and included a number of documents dated July 30, 2007 relating to the administrative investigation. While this incident, if it occurred as alleged, is a serious matter, it did not appear to affect Petitioner's ability to object to the R&R. Petitioner raised only general claims regarding access to the prison law library, stating it was difficult for him to get permission to use it and that he had not yet been able to get access. He also said his legal papers had not been given to him, apparently referring to records of the administrative proceedings. The matters raised in this pleading present no cognizable objection to the R&R nor any claim that can be litigated in these habeas proceedings.

Petitioner then submitted a document styled as Petitioner's traverse (the "Supplemental Objections"), which the Court accepted by discrepancy order on January 22, 2008, directing that it be filed *nunc pro tunc* to January 14, 2008. In the Supplemental Objections, Petitioner addressed the merits of the R&R. The Supplemental Objections cite criminal proceedings by case number and refer to specifics of the trial, indicating Petitioner had the legal records he needed to refer to. He did not seek leave to supplement his objections further, nor did he seek any further extensions of time.

Except for a notice of change of address, Petitioner filed no further pleadings. Because the were filed after the R&R was issued, the Court construes the First and Supplemental Objections together as Petitioner's objections to the R&R (collectively, "Objections"). The First Objections and Application for Extension refer to incidents in prison

which may have prevented Petitioner from filing a traverse but did not prevent Petitioner from objecting to the R&R. Petitioner's requests concerning the investigation of alleged prison staff misconduct are deemed abandoned in his Supplemental Objections, but to the extent he did not abandon them they would be denied as moot. The Objections are therefore **ACCEPTED AS FILED**.

## II.     Legal Standards

A district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions" on a dispositive matter prepared by a magistrate judge proceeding without the consent of the parties for all purposes. Fed. R. Civ. P. 72(b); *see also* 28 U.S.C. § 636(b)(1). An objecting party may "serve and file specific written objections to the proposed findings and recommendations," and "a party may respond to another party's objections." Rule 72(b).

In reviewing an R&R, "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The court reviews de novo the magistrate judge's conclusions of law. *Robbins v. Carey*, 481 F.3d 1143, 1146–47 (9th Cir. 2007).

The Court "entertain[s] an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254 habeas proceedings thus measure state convictions against federal constitutional requirements applicable to the states. Only errors of federal constitutional magnitude will support federal intervention in state judicial proceedings, and only to correct such errors. *See Oxborrow v. Eikenberry*, 877 F.2d 1395, 1400 (9th Cir. 1989); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990).

The Court may not grant habeas relief on a claim adjudicated on the merits in state court unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  "In order for a federal court to find a state court's application of [the Supreme Court's] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. . . . The state court's application must have been 'objectively unreasonable.'"  *Nunes v. Ramirez-Palmer*, 485 F.3d 432, 438 (9th Cir. 2007), quoting *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003).

### III.     Factual and Evidentiary Background

Petitioner does not object to the R&R's recitation of state court procedural history or characterization of the record, nor does he object to its factual findings, which the Court therefore **ADOPTS**.  The following summary is taken from the R&R's statement of facts.

Petitioner was charged with and convicted of conspiracy to commit grand theft (count 1), two counts of grand theft (counts 12, 16), attempted grand theft (count 19), six counts of unlawfully taking or driving a vehicle (counts 2, 3, 9, 10, 14, 17), four counts of burglary (counts 11, 13, 15, 18), evading an officer with reckless driving (count 5), receipt of stolen property (count 6), harming or interfering with a police animal (count 7, Petitioner only), and resisting an officer (count 8).  Petitioner was also charged with one count of attempted burglary of which he was acquitted (count 4).

Together with his Co-defendant Hillard, Petitioner allegedly conspired to steal stake bed trucks with hydraulic lifts, which they then used to steal automated teller machines, commonly known as ATMs, from businesses.  Petitioner and his Co-defendant were accused of stealing a blue Nissan Frontier truck, a 2003 Ford F-550 (stolen from ICI Paints), and Ford F-350 United Rentals stake bed truck, a 2000 ford F-359 truck (from ThyssenKrupp Elevators), and a Ford F-450 stake bed truck (stolen from Sherwin Williams), and a Ford F-450 stake bed truck (stolen from a Firestone repair shop).  These trucks, equipped with Tommy lifts, were then used to pull ATMs out of businesses.

/ / /

/ / /

/ / /

1  **IV.    Petitioner's Objections to the R&R**

2      Petitioner objects that the evidence adduced at trial was insufficient to support a
3  conviction on most of the counts,[2] (First Objection at 3–4), that evidence of other uncharged
4  crimes should not have been admitted (*id.* at 4, Supplemental Objections at 2), and that
5  consecutive terms should not have been imposed. (*Id.* at 1.)

6       **A.    Objection: Insufficient Evidence**

7      Petitioner's argument in his Petition consisted merely of a statement that "Petitioner's
8  right to due process was violated by insufficient evidence" and gave as supporting facts the
9  statement: "The conviction with less than substantial evidence violated my right to due
10 process under the 14th amendment[ ]." (Pet. at 6.) By itself, this does not merit habeas relief.
11 *See Jones v. Gomez*, 66 F.3d 199, 204 (1995) ("It is well-settled that '[c]onclusory
12 allegations which are not supported by a statement of specific facts do not warrant habeas
13 relief.'") (quoting *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994)).

14     The R&R, however, thoroughly addressed the issue of the sufficiency of the evidence,
15 apparently on the basis of arguments made in state court proceedings, and the Court has
16 reviewed Petitioner's objection to its conclusions. In the body of the Objections, Petitioner
17 provides no argument, cites no authority, and points to no evidence in support of this
18 objection. Instead, he merely says the R&R is wrong. A summary attached to the First
19 Objections adds detail, however, explaining that Petitioner believes there was a flaw in the
20 evidence. (First Objection at 5.) Out of an abundance of caution, the Court will examine the
21 basis for this objection even though, as noted, Petitioner failed to raise it in the Petition.

22     Specifically, Petitioner believes no evidence linked him to a particular stolen rental
23 truck prior to the night of October 9, 2003, when he was arrested. (First Objection at 5.)
24 Rather, he seems to argue, some other man stole and was driving the truck on October 6,
25 2003 and he merely got into the truck at some later time. He bases this on the lack of

---

[2] He does, however, admit the evidence supports the jury's finding he "made a very bad choice on October 9, 2003," the night Petitioner was apprehended after fleeing with an accomplice in a stolen truck filled with items taken in several burglaries. (First Objection at 3, R&R at 4:4–7:1.)

surveillance footage from a 7-11 convenience store and an officer's description of Hillard's accomplice as "about six feet tall." Petitioner also argues, without citing the record, that the trial judge admitted the evidence did not support a conviction. (*Id.* at 6.)

The Supreme Court has explicitly held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). However, "[a] petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). Relief may be granted only if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

In the First Objections, Petitioner admits he "made a very bad choice on October 9, 2003," the night he was arrested. (First Objection at 3.) The R&R gives a detailed account of the evidence of what Petitioner did that evening, (R&R, 5:4–7:1), which by itself is easily adequate to convict him of evading an officer with reckless driving, receipt of stolen property, harming or interfering with a police animal, and resisting an officer. Evidence retrieved from the two stolen cars Petitioner and his Co-defendant used that evening also strongly links him to several other burglaries and thefts. Thus, the evidence linking Petitioner with the charged crimes — as conceded even by his own Objections — is powerful even without delving into any other evidence.

The Court has reviewed the remaining evidence, the R&R's very extensive unobjected-to findings, and the R&R's analysis. (R&R, 3:2–10:14 and nn.12–103, 11:25–13:26.) Petitioner's argument here is essentially a rehash of his argument on direct appeal (Pet'r's Opening Br. on Appeal at 24–31), which substantially understates the evidence against him. Petitioner also points to the lack of certain types of evidence (*i.e.*, reliable positive identification by eyewitnesses, fingerprint evidence, and a clear security video), as well as the fact that most of the physical evidence was found in his Co-defendant's

home. He fails, however, to acknowledge other substantial evidence against him, such as physical evidence linking him with crimes, and evidence of coordinated effort between him and his Co-defendant. (*See* R&R, 6:12–7:1 (listing items found in stolen trucks Petitioner was driving, linked with other burglaries), 7:6–8:13 (noting items found in Petitioner's and his Co-defendant's residences), 8:14–16 (citing evidence of over 450 phone calls between Petitioner and his Co-defendant over a 1-year period leading up to their arrests).)

Petitioner's claim that the trial judge candidly admitted the evidence did not support a conviction has no basis in the record. Perhaps Petitioner is misremembering a discussion between his attorney and the judge, in which his attorney argued that the jury could not have logically convicted Petitioner of conspiracy if it acquitted him of attempted burglary (count 4). (App. Tr., 1448:24–1449:16.) The judge, however, disagreed, saying he didn't think the verdict was inconsistent, and explaining:

> There's an agreement first and then there's a crime. If the crime doesn't get carried out, it doesn't negate the conspiracy.
>
> My sense of it at the time was they thought that the actual action on the street that night just never got to the point where it became an attempt. Didn't get beyond mere planning to the present execution of the plan.

(*Id.*, 1449:2–8.)

The Court finds the R&R correctly concluded a reasonable jury could have convicted Petitioner on the basis of the evidence before it. This objection is therefore **OVERRULED**.

### B. Objection: Evidence of Uncharged Crimes

The R&R summarized the evidence as showing that a series of nine uncharged burglaries of businesses in northern San Diego county continued for a year leading up to the night Petitioner and his Co-defendant were arrested. (R&R, 9:6–12.) The burglaries were notably similar to the ones for which Petitioner was charged, and stopped when Petitioner and his Co-defendant were arrested. (*Id.*)

Petitioner argues this series of burglaries was no different from more than twelve other burglaries that continued even after his arrest. (Supplemental Objections at 2.) The

///

R&R notes two other series of burglaries in which the thieves' objects were also ATMs, but where the methods and descriptions of participants differed substantially. (R&R, 8:18–9:5.)

The evidence Petitioner complains of was admitted in order to rebut Petitioner's Co-defendant's attempt to introduce a third-party culpability defense. (R&R, 15:5–26.) In response to Hillard's evidence of other ATM robberies, the prosecution offered evidence showing the other series of burglaries were materially different from the series that ended when Petitioner and his Co-defendant were arrested. Even if offered against Petitioner, however, the R&R correctly points out the evidence was relevant because it helped explain some of the evidence found in Hillard's home. (*Id.*, 15:18–20.)

Evidence of other bad acts can violate a defendant's due process rights "[o]nly if there are *no* permissible inferences the jury may draw from the evidence . . . ." *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991). Here, the jury could have drawn several permissible inferences from the evidence.

As with Petitioner's previous objection, this is essentially a rehash of his argument on appeal. (Pet'r's Opening Br. on Appeal at 35–44.) That argument, however, was based primarily on California law. Even if, as Petitioner argued there, the trial court erred, its error did not deny him a fair trial, because as noted the jury already had evidence Petitioner had committed a series of burglaries and ATM robberies. There is no reason to believe admission of this additional evidence unduly inflamed the jury's passions or unfairly prejudiced them against Petitioner or in any other way denied him a fundamentally fair trial. *Jammal*, 926 F.2d at 920 (explaining that, where evidence was not of the type that necessarily prevents a fair trial, petitioner was not entitled to habeas relief even if the trial court erred in admitting it).

This objection is therefore **OVERRULED**.

**C.    Objection: Basis for Consecutive Offenses Not Found by Jury**

The R&R analyzed Petitioner's claims in light of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Blakely v. Washington*, 542 U.S. 296 (2004), *United States v. Booker*, 543 U.S. 220 (2005), and *Cunningham v. California*, 549 U.S. 270 (2007), and found no basis for

habeas relief. Petitioner has objected to this recommendation, arguing that by imposing consecutive terms of imprisonment "based on facts not admitted or found to be true" the state court violated his due process rights. (Supplemental Objections at 1.)

Even assuming, *arguendo*, he was sentenced to consecutive terms of imprisonment based on facts not admitted or found by a jury, such a claim cannot serve as a basis for federal habeas relief because it was not contravene or misapply "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). Petitioner would have to rely on *Apprendi* or its progeny, but none of these cases provide for the relief he is seeking. The U.S. District Court for the Central District of California recently dealt with a similar question and concluded:

> Since the Supreme Court has never held that the rationale of *Apprendi* and its progeny applies to the imposition of consecutive sentences, the Court is unable to find or conclude that the California courts' rejection of petitioner's challenge to the imposition of consecutive sentences under California's sentencing scheme either was contrary to or involved an unreasonable application of clearly established Supreme Court law.

*Castillo v. Clark*, 2009 WL 811599, slip op. at *39 (C.D.Cal. Mar. 27, 2009).

This objection is therefore **OVERRULED**.

**V.    Conclusion and Order**

To the extent Petitioner may have attempted to raise any further objections to the R&R, the Court finds he has not stated them with any specificity so as to require review. The Court therefore **ADOPTS** the R&R. The Petition is **DENIED**.

**IT IS SO ORDERED**.

DATED: April 22, 2009

*[signature]*

**HONORABLE LARRY ALAN BURNS**
United States District Judge